IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

EIC SOLUTIONS, INC.,

    Plaintiff,

       v.                           CIVIL NO.: WDQ-13-3609

BRUCE BLACKWAY, *et al.*,

    Defendants.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

EIC Solutions, Inc. ("EIC") sued CP Cases Ltd. ("CP"), COOL Portable Air Conditioning Ltd. ("Cool"), and Bruce Blackway (collectively, the "Defendants") for patent infringement. Pending are Cool's motion to dismiss for lack of personal jurisdiction and the Defendants' motions to dismiss for failure to state a claim. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the following reasons, the motions will be denied.

I.   Background[1]

EIC is a Pennsylvania corporation that "designs and manufactures thermoelectric air conditioners[]/cooling systems, enclosures, and transit cases used to house and protect electronics used in industry and by the military."  ECF No. 1 at ¶ 2 (hereinafter, "Compl."). EIC was founded in 1972. *Id.*  In 2000, the current owners acquired EIC.  *Id.*  Bruce Blackway was one of the new owners, and became EIC's President and General Manager.  *Id.* at ¶¶ 2, 7.

In 2001, EIC began introducing "a new line of air conditioned enclosures" for their air conditioning ("AC") units. *Id.*  In 2005, "EIC developed and began selling air conditioned transit cases" to the military and industry customers.  *Id.* Through its business, EIC developed and "owns all right, title, and interest in" three patents: United States Patent No. 6,345,507 ("the '507 Patent") for a "Compact Thermoelectric Cooling System," United States Patent No. 6,499,306 ("the '306 Patent") for a "Compact Thermoelectric Cooling System," and United States Patent No. 8,490,413 ("the '413 Patent") for a

---

[1] For the motion to dismiss, the well-pled allegations in the complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).  The Court will consider the pleadings, matters of public record, and documents attached to the motion that are integral to the complaint and whose authenticity is not disputed. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

"Thermoelectrically Air Conditioned Transit Case."  *Id.* at ¶3.
Blackway was one of the inventors of the '413 Patent.  *Id.* at ¶
16.  On June 25, 2008, Blackway assigned all his rights in the
'413 Patent to EIC.  *Id.*

In 2008, EIC began a business relationship with CP, a
subsidiary of CP Global, Ltd.  *Id.* at ¶¶ 12, 16.  CP is a
corporation organized and existing under the laws of the United
Kingdom.  *Id.* at ¶ 4.  CP "manufactures aluminum, roto-molded
(plastic), and fiberglass rack mount transit cases."  *Id.*  EIC
"would buy transit cases from CP to install EIC thermoelectric
coolers in these cases to be sold as thermoelectrically cooled
transit cases."  *Id.* at ¶ 12.  Between 2008 and 2013, EIC and CP
enjoyed "a good business relationship."  *Id.* at ¶ 13.  CP and
EIC marketed each other's products on their websites, and, to
date, CP has bought more than 100 AC units from EIC.  *Id.*

In 2009, CP began selling its own thermoelectrically cooled
transit cases and "thermoelectrically cooled collars for use
with transit cases."  *Id.* at ¶ 12.  Although EIC believed that
CP was infringing EIC's patents, EIC allowed CP to continue
marketing its transit cases because CP's products "incorporated
thermoelectric AC units purchased from EIC."  *Id.*  CP never
obtained a license from EIC for the patented technology.  *Id.* at
¶ 15.

In March 2011, Blackway resigned from EIC, and signed a confidentiality and two-year non-competition agreement. *Id.* at ¶ 16. Blackway retained a 5% ownership interest in EIC. ECF No. 24 at 8. In the Spring of 2013, EIC contacted Blackway to gather information for the '413 Patent's continuation application. Compl. at ¶ 17. On September 20, 2013, Blackway sent a letter to EIC. *Id.* In the letter, Blackway informed EIC that he "ha[d] been working (part time) for a few months for a new company -- COOL Portable Air Conditioning." ECF No. 1-5. Blackway stated that Cool was "headquarter[ed] in Maryland and funded by CP Cases in the U.K.," and Cool was producing and selling "air conditioners, transit cases and enclosures in various markets, some similar to those in which EIC competes."[2] *Id.* Blackway recognized a possible conflict with the '413 Patent, refused to sign the continuation documents, and advised that the current EIC president not "have talks with the board about some sort of legal activity related to Cool and/or CP" because any legal action "would be exceptionally foolish" and would harm the business relationship with CP. *Id.*

Before 2013, there were no thermoelectrically cooled transit cases on the market that did not include an EIC AC unit.

---

[2] According to Cool, Blackway was only a consultant, and its relationship with Blackway ended in October 2013. *See* ECF No. 18-1 at 11. In a recent email to EIC, Blackway identified himself as a CP "Sales Manager." *See* ECF No. 24-2 at 2, 4.

Compl. at ¶ 43.  Blackway's letter "was the first time EIC became aware of Cool or its products." *Id.* at ¶ 17.  EIC discovered that Cool was a U.K. Corporation "recently founded by CP Global Ltd. to provide thermoelectric air conditioners for use with CP's transit cases." *Id.* at ¶ 6.  Cool's website had advertisements for AC units, and listed Cool's "US Office" as 11941 Industrial Park Road, Ste 2, Bishopville, Maryland.[3]  ECF No. 24-1 at 10 (screenshot of webpage).  Cool's U.K. office address was the same as CP's.  *Id.*

EIC discovered that CP was selling thermoelectrically cooled transit cases using Cool's AC units.  Comp. at ¶ 19.  EIC immediately contacted CP, "and stated that these products, which do not utilize EIC thermoelectric air conditioning units," would infringe EIC's patents.  *Id.* at ¶ 20.  "[N]either CP nor Cool have agreed to stop using, selling, or offering these products for sale."  *Id.*  EIC believed that the Defendants were trying "to replace EIC as a supplier of thermoelectric air conditioning units."  *Id.* at ¶ 18.

On November 27, 2013, EIC sued the Defendants for infringing the '507, '306, and '413 Patents.  ECF No. 1.  EIC alleged that CP was "making, using, selling, offering for sale

---

[3] This is also the address for CP's U.S. office.  *See* ECF No. 18-3 at 3.

and/or importing thermoelectrically cooled transit cases that include all elements of at least one claim" of each of the patents.[4]  Comp. at ¶ 23.  EIC identified CP's Amazon transit case, Erack transit case, and Cool-Collar as infringing, although it did not limit its claims to these products.  *Id.* EIC made similar allegations against Cool, identifying Cool's COOL TEU thermoelectric air conditioners as an infringing product.  *Id.* at ¶ 25.  EIC also alleged that Cool and CP contributed to and induced their customers' infringement, and Blackway induced Cool's and CP's infringement.  *Id.* at ¶¶ 29-30, 35.  After EIC filed suit, Cool's website changed.  The reference to Cool's "US Office" in Maryland was altered to state "CP Cases US Office."  ECF No. 27-1 at 13.

On April 24, 2014, Cool and Blackway moved to dismiss for failure to state a claim.  ECF No. 18.  Cool also argued that the Court lacked personal jurisdiction over Cool.[5]  *Id.*  In support of its personal jurisdiction argument, Cool submitted the declaration of its director, Peter M. Ross.  ECF No. 18-3. Ross asserted that Cool has never maintained an office, manufacturing plant, or any business in Maryland.  *Id.*  Ross

---

[4] Although there is a separate count of infringement in the Complaint for each of the patents, the allegations are identical.  *See* ECF No. 1.  Therefore, the Court will discuss the claims together.

[5] Cool also moved to dismiss for improper service of process, but withdrew this motion in its reply.  *See* ECF No. 26 at 2.

stated that the Maryland office belonged to CP, and that the change to Cool's website was "cosmetic only, and does not reflect any change in the ownership, lease, or use of the Bishopville office." *Id.* On May 14, 2014, EIC opposed Blackway and Cool's motion. ECF No. 24. On May 29, 2014, Blackway and Cool replied. ECF No. 26.

On June 3, 2014, CP moved to dismiss for failure to state a claim, incorporating by reference that portion of Blackway and Cool's motion. ECF No. 27. On June 20, 2014, EIC opposed the motion. ECF No. 30. On July 10, 2014, CP replied. ECF No. 31.

II. Analysis

A. Cool's Motion for Lack of Personal Jurisdiction

1. Legal Standard

The Court may dismiss a complaint unless the plaintiff can prove personal jurisdiction by a preponderance of the evidence.[6] When, as here, the Court decides the issue without a hearing, "the plaintiff need prove only a *prima facie* case of personal jurisdiction." *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60

---

[6] *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993); Fed. R. Civ. P. 12(b)(2). Personal jurisdiction may be general or specific. General jurisdiction requires the defendant's "continuous and systematic" contacts with the forum state. *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 450 (4th Cir. 2000). Specific jurisdiction requires that the defendant's "contacts relate to the cause of action and create a substantial connection with the forum state." *Id.* EIC does not argue that the Court has general jurisdiction over Cool. *See* ECF No. 24 at 20-21.

(4th Cir. 1993).  "In deciding whether the plaintiff has made the requisite showing, the [C]ourt must take all disputed facts and reasonable inferences in favor of the plaintiff."  *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  However, the Court need not "credit conclusory allegations or draw farfetched inferences."[7]

A federal district court may assert specific personal jurisdiction over a non-resident when the exercise of jurisdiction is (1) authorized by the forum state's long-arm statute, and (2) consistent with due process.[8]

Maryland's long-arm statute limits jurisdiction to claims "arising from any act enumerated [in the statute]."  Md. Code, Cts. & Jud. Proc. § 6-103(a).  Under subsection (b)(1) of the statute, a defendant who "transacts any business" in Maryland is subject to jurisdiction.  Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1).  Although a defendant need not have been physically

---

[7] *Masselli & Lane, PC v. Miller & Schuh, PA*, No. 99-2440, 2000 WL 691100, *1 (4th Cir. May 30, 2000) (*citing Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994)).

[8] *Carefirst of Md., Inc.*, 334 F.3d at 396.  In Maryland, the "statutory inquiry merges with [the] constitutional inquiry," because "Maryland courts have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution." *Id*. at 396-97.  A plaintiff must still specify which provisions of the long-arm statute provide for personal jurisdiction over the defendant. *See Cleaning Auth., Inc. v. Neubert*, 739 F. Supp. 2d 807, 811-12 & n.7 (D. Md. 2010); *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006).

present in Maryland,[9] the plaintiff must show "some purposeful act in Maryland in relation to one or more of the elements of [the] cause of action."[10]

Due process requires that the defendant have "minimum contacts" with the State such that maintaining the suit "does not offend 'traditional notions of fair play and substantial justice.'"[11]  In determining whether the exercise of specific personal jurisdiction comports with due process, a court traditionally considers, *inter alia,* "the extent to which the defendant has purposefully availed [himself] of the privilege of conducting activities in the state."  *Carefirst of Md., Inc.,* 334 F.3d at 397.  In patent cases, the due process prong of personal jurisdiction is governed by the law of the Federal

---

[9] *Capital Source Fin., LLC v. Delco Oil, Inc.,* 625 F. Supp. 2d 304, 313 (D. Md. 2007).

[10] *Talegen Corp. v. Signet Leasing & Fin. Corp.,* 657 A.2d 406, 409 n.3 (Md. Ct. Spec. App. 1995); *see also Dring v. Sullivan,* 423 F. Supp. 2d 540, 546 (D. Md. 2006) (although it was "arguable that [the] [d]efendant [had] performed work or service in Maryland," jurisdiction under subsection (b)(1) was improper because "the cause of action [did] not arise from that work or service"); *Bond v. Messerman,* 873 A.2d 417, 430 (Md. Ct. Spec. App. 2005) ("The fact that [the defendant] [had] referred his client to [a Maryland hospital] ha[d] no bearing as to the jurisdictional issue because that referral [was] in no way connected to [the plaintiff's] cause of action against [the defendant].").

[11] *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291-92 (1980) (*quoting Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

9

Circuit. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008).

> 2. Personal Jurisdiction over Cool

Cool argues that the Court lacks personal jurisdiction because Cool has never had any contact with Maryland.[12]   ECF No. 18-1 at 23.   EIC argues that Cool purposefully availed itself of Maryland by having an office in Maryland.   ECF No. 24 at 6-8. Cool asserts that Ross's declaration clarified that Cool does not have an office in Maryland, and EIC cannot rely on conclusionary statements to support jurisdiction.   ECF No. 26 at 7-9.

Despite Cool's assertion that EIC is merely relying on conclusionary statements, EIC relies on a screenshot of Cool's website which listed a "US Office," and Blackway's letter stating that Cool was "headquartered" in Maryland.   *See* ECF No. 24 at 6-8.   Cool essentially argues that Ross's declaration should somehow trump this evidence, and makes EIC's argument "conclusory."   *See* ECF No. 26 at 7-9.   However, "the [C]ourt must take all disputed facts and reasonable inferences in favor

---

[12] "Cool does not maintain (and has never maintained) a place of business in Maryland or elsewhere in the United States. Likewise, Cool does not have (and has never had) any officers or employees in Maryland or the United States.   Further, Cool does not make, use, distribute, and/or sell any products in Maryland, and does not specifically target any marketing, advertising, or solicitations to Maryland."   ECF No. 18-1 at 24 (citations omitted).

of the plaintiff." *Carefirst*, 334 F.3d at 396; *see also 3D Systems, Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376-77 (Fed. Cir. 1998).

In *Mylan Laboratories, Inc. v. Akzo*, the Fourth Circuit confronted a similar situation.  2 F.3d 56, 61-62 (4th Cir. 1993).[13]  The plaintiff was attempting to obtain personal jurisdiction over a parent corporation through its subsidiary by arguing that the parent controlled the subsidiary. *Id.*  In support of this argument, the plaintiff produced the resume of the subsidiary's chief executive officer which stated that he was employed by the parent company at the time of the incident at suit. *Id.*  In response, the parent corporation provided the CEO's declaration stating that his resume was in error, and he had never worked for the parent corporation. *Id.*  The district court dismissed the claims against the parent corporation for lack of personal jurisdiction given the CEO's declaration. *Id.* Although the Fourth Circuit upheld the dismissal on other grounds, it determined that the district court erred by not affording equal weight to the resume and declaration. *See id.* ("Taking Van Hulst's resume in its most credible light, as we

---

[13] The Court recognizes that Federal Circuit and not Fourth Circuit law governs its personal jurisdiction analysis.  After a thorough search, the Court has found no Federal Circuit case that's inconsistent with *Mylan*.  Both courts acknowledge that the plaintiff is entitled to all reasonable inferences. *See Carefirst*, 334 F.3d at 396; *3D Systems*, 160 F.3d at 1376-77.

11

must in reviewing the grant of a motion to dismiss, we find that Mylan's assertions carry the same quantum of trustworthiness as Akzo's sworn affidavit.  Construing both documents in the light most favorable to Mylan, we believe the district court erred in resolving the matter of Van Hulst's employment in Akzo's favor.").

Accordingly, this Court must give EIC's evidence the same weight as Ross's declaration.  Given the information in Blackway's letter and on Cool's website, EIC has made a *prima facie* showing that Cool had an office in Maryland.  Because Cool was physically present in Maryland, conducting business through its office, and the current suit arises from that business, this Court has personal jurisdiction over Cool.

  B. The Defendants' Motions to Dismiss for Failure to State a
     Claim

        1. Legal Standard

    "A motion to dismiss for failure to state a claim . . . is a purely procedural question not pertaining to patent law." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007).  Accordingly, Fourth Circuit law, rather than Federal Circuit law, governs.  *See id.* at 1356.

    Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but

does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

### 2. Direct Infringement

To plead a direct infringement claim, a complaint must, at minimum, meet the requirements of Form 18 of the Federal Rules of Civil Procedure. *See K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283-84 (Fed. Cir. 2013) ("[T]o the extent any conflict exists between *Twombly* (and its progeny) and the Forms regarding pleadings requirements, the Forms control."); *Clouding IP, LLC v. Amazon.com, Inc.*, C.A. Nos. 12-641-LPS, 12-642-LPS, 12-675-LPS, 2013 WL 2293452, at *2 (D.Del. May 24, 2013).[14]  Form 18 requires a plaintiff to make "(1) an

---

[14] The Fourth Circuit has "not yet considered a motion to dismiss in a patent case with the benefit of the Supreme Court's precedent in *Twombly* and *Iqbal*.  The Federal Circuit, however, offered guidance in *McZeal*," and courts within the Fourth Circuit have relied on that guidance. *Adiscov, LLC v. Autonomy Corp.*, 762 F. Supp. 2d 826, 829-32 (E.D. Va. 2011); *see also Wright Mfg. Inc. v. Toro Co.*, No. 11-1373-MJG, 2011 WL 6211172, at *1 (D. Md. Dec. 13, 2011).

The Federal Circuit has explained that construing Form 18's standard as consistent with *Twombly* and *Iqbal* "was dictated by Supreme Court precedent." *K-Tech Telecomms.*, 714 F.3d at 1283 n.1.  Therefore, Form 18 should be the minimum pleading standard no matter the law of any individual circuit.

The Defendants urge this Court to depart from the Federal Circuit's clear guidance in this area and apply a higher pleading standard. *See* ECF No. 18-1 at 10.  This higher standard has been used by a few courts, but has been rejected by the Federal Circuit. *See Macronix Int'l Co. v. Spansion, Inc.*, 4 F. Supp. 3d 797, 801-04 (E.D. Va. 2014).

Given the Federal Circuit's clear reasoning and reliance on Supreme Court precedent, this Court sees no reason to depart from its standard without clear guidance from the Fourth

allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent'; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages." *K-Tech Telecomms.*, 714 F.3d at 1283.

"Form 18 does not require [a plaintiff] to specify what functionality infringed, or any facts that show how [a defendant] performs even one step of a claimed method." *Clouding IP*, 2013 WL 2293452, at *2 (internal quotation and citation omitted). "The touchstones of an appropriate analysis under Form 18 are notice and facial plausibility," and although "these requirements serve as a bar against frivolous pleading, it is not an extraordinarily high one." *K-Tech Telecomms.*, 714 F.3d at 1286(internal citations omitted).

It is clear from the complaint that EIC has fulfilled the requirements of Form 18. EIC alleged that it is the owner of the three patents in suit, CP and Cool are violating the patents by "making, using, selling, offering for sale and/or importing"

---

Circuit. *See K-Tech Telecomms.*, 714 F.3d at 1279, 1283. Further, this Court has adopted Form 18's pleading standard in other recent cases. *See, e.g., Paice LLC v. Hyundai Motor Co.*, No. WDQ-12-0499, 2013 U.S. Dist. LEXIS 46963, at *11-12 (D. Md. March 27, 2013).

infringing products, and EIC informed the Defendants of the
infringement.  EIC also exceeded this standard by identifying
possibly infringing products.  Of course, EIC's claims may not
survive summary judgment.  This Court finds only that the
allegations in the amended complaint are sufficient to "state a
claim to relief that is plausible on its face." *Twombly*, 550
U.S. at 570.[15]  The law does not require more.

### 3. Willful Infringement

"A finding of willful infringement allows an award of
enhanced damages under 35 U.S.C. § 284." *Bard Peripheral*
*Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1005
(Fed. Cir. 2012).  Section 284 permits a court to "increase the
damages up to three times the amount found or assessed."

"[A] party cannot be found to have 'willfully' infringed a
patent of which the party had no knowledge." *Gustafson, Inc. v.*

---

[15] *Cf., e.g.*, *Sentry Protection Prods., Inc. v. Eagle Mfg. Co.*,
400 F.3d 910, 918 (Fed. Cir. 2005) (willful infringement
sufficiently pled when plaintiff alleged that the infringements
"have been willful and with full knowledge of the [patents in
suit]"); *Investpic, LLC v. FactSet Research Sys., Inc.*, No. 10
Civ. 1028, 2011 WL 4591078, at *2 (D. Del. Sept. 30, 2011)
(plaintiff's allegation that the defendants "knew" of the
patent, because the patent was "well-known in the industry--
having been cited by at least 79 issued U.S. patents since
2001," was sufficient to support claim of willful infringement);
*Oracle Corp. v. DrugLogic, Inc.*, 807 F. Supp. 2d 885, 902 (N.D.
Cal. 2011) (plaintiff "state[d] sufficient facts to support a
claim for willful infringement" by alleging that the defendant
was "aware" of the relevant patent and had "actual notice" of
the infringement claims").

*Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990).  To prove a cause of action for willful infringement, a patent owner must demonstrate infringement, and that (1) "the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," and (2) "this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer."  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc).  "If the first prong cannot be shown, then the court should not put the issue of willfulness--including the second "subjective" prong--before a jury."  *Execware, LLC v. Staples, Inc.*, No. 11-836-LPS-SRF, 2012 WL 6138340, at *5 (D. Del. Dec. 10, 2012).[16]

"[Although] ultimately a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent, this is an evidentiary burden, not a pleading standard."  *Pecorino v. Vutec Corp.*, No. 11-CV-

---

[16] *See also Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1236 (Fed. Cir. 2011) ("Should the court determine that the infringer's reliance on a defense was not objectively reckless, it cannot send the question of willfulness to the jury, [because] proving the objective prong is a predicate to consideration of the subjective prong.").

6312 (ADS) (ARL), 2012 WL 5989918, at *24 (E.D.N.Y. Nov. 30, 2012).[17] Unfortunately, "there is a lack of complete uniformity in recent district court authority addressing willful infringe- ment claims in light of *Twombly and Iqbal*." *Sony Corp.*, 768 F. Supp. 2d at 1064 (internal quotation marks omitted). "[C]ourts have generally required a complaint to allege facts that, at a minimum, show direct infringement, *i.e.*, that identify the patent in suit, and show the defendant's actual knowledge of the existence of the patent." *Gradient Enters., Inc. v. Skype Techs. S.A.*, 848 F. Supp. 2d 404, 409 (W.D.N.Y. 2012); *see id.*

---

*See also, e.g.*, *Sony Corp. v. LG Elecs. U.S.A., Inc.*, 768 F. Supp. 2d 1058, 1064 (C.D. Cal. 2011) ("plaintiff need not allege specific facts establishing objective recklessness under *Seagate*"); *Milwaukee Elec. Tool Corp. v. Hitachi Koki, Ltd.*, No. 09-C-948, 2011 WL 665439, at *3 (E.D. Wis. Feb. 14, 2011); ("The defendants' reliance on *Seagate* for purposes of their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is misplaced. Although the defendants properly assert that *Seagate* sets forth the standard for establishing willful infringement, the defendants fail to recognize that *Seagate* is not controlling for purposes of pleading under Fed. R. Civ. P. 8(a)."); *Advanced Analogic Techs., Inc. v. Kinetic Techs., Inc.*, No. C-09-1360 MMC, 2009 WL 1974602, at *2 (N.D. Cal. July 8, 2009) (rejecting defendant's reliance on *Seagate* because it addressed "the 'evidence' necessary 'to establish' willful infringement, not the prerequisites for pleading willful infringement"); *Jardin v. Datallegro, Inc.*, No. 08cv1462-IEG-RBB, 2009 WL 186194, at *7 (S.D. Cal. Jan. 20, 2009) ("*Seagate* only addressed what is necessary to prove a claim of willfulness, not whether a plaintiff has sufficiently alleged willful infringement as a pleading matter."); *Rambus v. Nvidia Corp.*, No. C-08-3343 SI, 2008 WL 4911165, at *2 (N.D. Cal. Nov. 13, 2008) (rejecting defendant's reliance on *Seagate* because it addressed what is necessary to prove, not plead, a claim of willfulness).

18

(collecting cases).  Mere knowledge of the *pendency* of patent
applications does not suffice.[18]

Here, a reasonable inference may be drawn that the
Defendants were aware of the patents in suit.  *See Iqbal*, 556
U.S. at 678.  EIC and CP had a business relationship for several
years before the infringement.  This relationship was based on
the technology in suit.  Further, Cool and CP employed Blackway
who was not only the former President and General Manager of
EIC, but was a co-inventor of one of the patents.  Blackway also
sent a letter to EIC attempting to dissuade it from pursuing
legal action based on the patents.  Given the business
relationships and communications between EIC and the Defendants,
the complaint sufficiently states a claim for willful
infringement.  *See Paice LLC v. Hyundai Motor Co.*, No. WDQ-12-
0499, 2013 U.S. Dist. LEXIS 46963, at *16-19 (D. Md. March 27,
2013).

### 4. Indirect Infringement

In addition to direct infringement by CP and Cool, EIC also
alleges that all defendants indirectly infringed the patents.
Indirect infringement can occur either through "inducing" or
"contributing to" the infringement of a direct infringer.

---

[18] *E.g.*, *IpVenture, Inc. v. Cello P'ship*, No. 10-CV-04755-JSW,
2011 WL 207978, at *2 (N.D. Cal. Jan. 21, 2011).

Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." To prove that a defendant induced infringement, the plaintiff "must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (internal quotation marks and citation omitted).

For pleading purposes, "[i]dentification of a specific third-party direct infringer is not required to survive a motion to dismiss an induced infringement claim, so long as the factual allegations are sufficient to allow the inference that at least one direct infringer exists." *McRo, Inc. v. Rockstar Games, Inc.*, No. 12-1513-LPS-CJB, 2014 WL 1051517, at * 5 (D. Del. March 17, 2014); *see also In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336-37 (Fed. Cir. 2012). However, the plaintiff must allege facts to allow for the reasonable inferences that the defendant had knowledge that the direct infringer's acts were infringement, and the specific intent to induce such infringement. *See In re Bill of Lading*, 681 F.3d at 1338-39; *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1292-93 (Fed. Cir. 2008).

Here, EIC alleges that CP and Cool "induce their customers to infringe the [patents in suit] by making, using, selling,

20

offering for sale and/or importing" infringing products.  *See*

Compl. at ¶ 30.  EIC alleges that Blackway "encourag[ed] Cool

and CP to make, use, sell, and offer for sale products" that

infringe the patents.  *See id.* at ¶ 35.  EIC cites its past

business relationship with CP and Blackway's role with EIC,

status as co-inventor of the '413 Patent, and letter

discouraging legal action, to support its argument that the

Defendants had knowledge of another person's direct infringement

and specific intent to cause such infringement.  *See* Compl. at

¶¶ 30-38.  These pleadings are sufficient under Rule 12(b)(6).

> Under 35 U.S.C. § 271(c),

> Whoever offers to sell or sells within the United
> States or imports into the United States a component
> of a patented machine, manufacture, combination or
> composition, or a material or apparatus for use in
> practicing a patented process, constituting a material
> part of the invention, knowing the same to be
> especially made or especially adapted for use in an
> infringement of such patent, and not a staple article
> or commodity of commerce suitable for substantial
> noninfringing use, shall be liable as a contributory
> infringer.

As with induced infringement, contributory infringement requires

pleading direct infringement and a specific intent to cause such

infringement.  *See Global-Tech Appliances, Inc. v. SEB*, 131 S.

Ct. 2060, 2066-2068 (2011).  For the reasons, already discussed,

EIC's contributory infringement claims in the complaint are

sufficient to survive a motion to dismiss.

5. Blackway's Personal Liability

Blackway also argues that he cannot be personally liable for CP's and Cool's infringement because he is entitled to the protection of the corporate veil. *See* ECF No. 18-1 at 20.

"[T]he most frequently enunciated rule in Maryland is that although the courts will, in a proper case, disregard the corporate entity and deal with substance rather than form, as though a corporation did not exist, shareholders generally are not held individually liable for debts or obligations of a corporation except where it is necessary to prevent fraud . . . ." *Bar Arconti & Sons, Inc. v. Ames-Ennis, Inc.* 340 A.2d 225, 234 (Md. 1975); *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 728 A.2d 783, 789 (Md. Ct. Spec. App. 1999) ("[A]rguments that have urged a piercing of the veil for reasons other than fraud have failed in Maryland courts.") (internal quotations omitted).

Blackway has not shown that he is entitled to the protection of the corporate veil. Blackway and Cool allege that Blackway was only a consultant for Cool and was never an officer, shareholder, or employee. *See* ECF No. 18-1 at 11. EIC is suing Blackway for his own actions, not attempting to pierce the corporate veil to hold him responsible for the actions of a

corporation.[19]  Courts have routinely held that the corporate
veil does not protect an individual's personal infringement of a
patent, and does not apply to indirect infringement claims.
*See, e.g., WordTech Sys., Inc. v. Integrated Networks Solutions,
Inc.*, 609 F.3d 1308, 1313-17 (Fed. Cir. 2010).

III.  Conclusion

For the reasons stated above, the Defendants' motions will
be denied.

Date  1/12/15

William D. Quarles, Jr.
United States District Judge

[19] *See Winemiller v. Worldwide Asset Purchasing, LLC*, No. 1:09-cv-02487, 2011 WL 1457749, at *3 (D. Md. April 15, 2011) ("Under Maryland law, . . . '[a] principal is *prima facie* liable for the acts of his agent done in the general course of business authorized by him.") (*quoting Carroll v. State*, 3 A. 29, 29 (Md. 1885); *Allen v. Dackman*, 991 A.2s 1216, 1221 (Md. 2010) (defendant can be held individually liable if "he personally committed, inspired, or participated in the tort alleged . . . .").